**CASE NO.**_____

|  |  |  |
|---|---|---|
|  |  | IN THE UNITED STATES DISTRICT COURT |
|  | § | SOUTHERN DISTRICT OF TEXAS |
| **FOLEY MONROE NEALEY** | § | HOUSTON DIVISION |
| Petitioner | § |  |
|  | § |  |
|  | § |  |
| vs. | § |  |
|  | § |  |
| **TEXAS OFFICE OF ATTORNEY GENERAL** | § |  |
| Respondent |  |  |

## NOTICE DEMAND TO VACATE SUPPORT ORDER
## FEDERAL RULE 60(B)(4) DEMAND JUDICIAL REVIEW

THIS DEMAND TO VACATE SUPPORT ORDER IS SUBMITTED BY

**FOLEY MONROE NEALEY** INTO THIS COURT IN THE UNITED

SATES DISTRICT COURT, SOUTHERN DISTRICT OF TEXAS,

DIVISION OF HOUSTON **ON 12-12-2017** NOTICE TO THE COURT

DEMANDING REMEDY TO VACATE SUPPORT ORDERS CREATED

WITHOUT DUE PROCESS OF LAW BY AN ADJUDICATOR WHO IS

NOT UNBIASED NOR IMPARTIAL AS REQUIRED BY 5TH AND

14TH AMENDMENTS.

THE FACT FINDER WHO CREATED THIS VOID SUPPORT ORDER

HAD A PECUNIARY INTEREST IN THE OUTCOME AND WAS NOT

1

UNBIASED NOR IMPARTIAL THEREFORE THE SUPPORT ORDER IS VOID.

THE FACT FINDER'S SALARY IS PAID PARTIALLY OR WHOLLY FROM TITLE IV-D FEDERAL FUNDS RECEIVED FROM THE FACT FINDER'S DECISION THAT ESTABLISHED SUPPORT ORDER UNDER 42 USC SECTION 654 (3) A SEPARATE ORGANIZATION INDEPENDENT FROM THE COURTS REQUIRING AN IMPARTIAL JUDICIAL REVIEW AND CONFIRMATION BEFORE A PENNY CAN BE DEPRIVED UNDER THE 14TH AMENDMENT. [*SUPREME COURT OF THE UNITED STATES CAPERTON ET AL. v. A. T. MASSEY COAL CO., INC., ET AL. Tumey v. Ohio, 273 U. S. 510, 523*] WITHOUT AN INDEPENDENT JUDICIAL REVIEW FROM A JUDICIAL OFFICER WHOSE SALARY IS NOT PAID FROM FEDERAL FUNDS RECEIVED FROM TITLE IV-D ESTABLISHED SUPPORT ORDER THAT IS CAUSING DEPRIVATION OF PROPERTY AT THIS VERY MOMENT.

COMES NOW, ONE OF THE PEOPLE **FOLEY MONROE NEALEY,** AN AMERICAN CITIZEN STANDING UPON INALIENABLE RIGHTS

2

GUARANTEED BY THE UNITED STATES CONSTITUTION BILL OF RIGHTS.

MY STANDING UPON THE US CONSTITUTION AND EXPECTATION OF THIS COURT TO SUPPORT AND DEFEND THESE GUARANTEES SHALL NOT CAUSE THIS COURT OR ANY OF ITS EMPLOYEES TO CALL **FOLEY MONROE NEALEY** A "SOVEREIGN CITIZEN" OR "CONSTITUTIONALIST."

THE JUDICIAL OFFICER OR QUASI JUDICIAL OFFICIAL ADDRESSING THIS DEMAND TO VACATE MUST ADDRESS THIS DEMAND TO VACATE NOTICE WHILE IN PURSUANCE OF THE UNITED STATES CONSTITUTION AND BILL OF RIGHTS PURSUANT ARTICLE 6 SECTION 2 THE SUPREMACY CLAUSE AND IN PURSUANCE OF OATH FILED UNDER PUBLIC OFFICERS LAW. ANY JUDICIAL OR ADMINISTRATIVE PROCESS NOT IN PURSUANCE OF THE US CONSTITUTION BILL OF RIGHTS IS VOID PURSUANT SUPREME COURT MATTER MARBURY V MADISON AND IT IS THE DUTY OF THE COURTS TO ACT OBSTA PRINCIIS.

3

THE INTENTION OF THIS LENGTHY DEMAND TO VACATE PURSUANT FEDERAL RULE 60(B)(4) IS TO PROVE SUPPORT ORDERS FOR CHILD SUPPORT WERE MADE WITHOUT ANY SEMBLANCE OF DUE PROCESS AND PROVING THE PROCEDURES UNDER 45 CFR 303.101 WERE NOT FOLLOWED BY THE PRESIDING OFFICER, WHEREBY WHEN DUE PROCESS OF ANY KIND IS NOT FOLLOWED THE CONCLUSIONS MADE ARE VOID OR DEFECTIVE AND UNENFORCEABLE.

FURTHER, RIGHTS GUARANTEED BY THE UNITED STATES CONSTITUTION BILL OF RIGHTS CANNOT BE DEPRIVED BY ANY STATE CHILD SUPPORT LAWS OR STATUTES AS GUARANTEED UNDER 14TH AMENDMENT. THE COURTS HAVE COMMONLY HELD THAT RIGHTS GUARANTEED BY THE UNITED STATES CONSTITUTION, THE LAW OF THE LAND CANNOT BE DEPRIVED BY STATE STATUTES ***"That statutes which would deprive a citizen of the rights of person or property without a regular trial, according to the course and usage of common law, would not be the law of the land."*** ***Hoke v. Henderson, 15 NC 1 - 1833*** THE ESTABLISHMENT AND AGGRESSIVE ENFORCEMENT OF SUPPORT ORDERS WERE USED TO DEPRIVE PERSONAL PROPERTY FROM ONE OF THE PEOPLE

**FOLEY MONROE NEALEY.**

WHEREBY, IT IS THE DUTY OF THIS COURT UNDER THE UNITED STATES CONSTITUTION BILL OF RIGHTS TO IMPARTIALLY PROTECT AGAINST CONSTITUTIONAL ENCROACHMENTS AND PROVIDE IMPARTIAL EQUAL PROTECTION.

THE TITLE IV-D FUNDS RECEIVED FOR THE ESTABLISHMENT AND ENFORCEMENT OF CHILD SUPPORT RENDERS ALL PARTIES INVOLVED IN THE OUTCOME AS NOT IMPARTIAL ADJUDICATORS.

THE TITLE IV-D FUNDS ARE DEPOSITED INTO STATE TREASURY AND IS USED TO PAY SALARIES OF ALL EMPLOYEES INVOLVED IN THE ESTABLISHMENT OF CHILD SUPPORT, THEREFORE PRESIDING OFFICER HAS A PECUNIARY INTEREST IN THE OUTCOME AND CANNOT REMAIN IMPARTIAL. *SUPREME COURT OF THE UNITED STATES CAPERTON ET AL. v. A. T. MASSEY COAL CO., INC., ET AL. Tumey v. Ohio, 273 U. S. 510, 523*

IT IS THE DUTY OF THIS COURT AND THE PUBLIC OFFICER EXAMINING THE FACTS AND EVIDENCE TO IMMEDIATELY REMEDY THE HARMS CAUSED BY VOID SUPPORT ORDERS CLEARLY MADE IN VIOLATION OF DUE PROCESS, THEREFORE

THIS COURT HAS NO DISCRETION PURSUANT FEDERAL RULE 60(B)(4) AND ITS MANDATE TO IMPARTIALLY PROVIDE EQUAL PROTECTION OF THE LAWS AND MUST VACATE ALL SUPPORT ORDERS AGAINST **FOLEY MONROE NEALEY** MADE IN VIOLATION OF DUE PROCESS *AB INITIO **FROM THE BEGINNING** [**United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply, 55 F.3d 1311, 1317 (7th Cir.1995).**

**DECLARATION OF FACTS**

1. Comes now, one of the people **FOLEY MONROE NEALEY** demanding to vacate void judgments created in violation of due process are alleging to be court orders for support that are illegally being used to deprive this man of his right to ownership of his property*. Although relief under Rule 60(b) is subject to review for abuse of discretion, if a "judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment." United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply, 55 F.3d 1311, 1317 (7th Cir.1995). A judgment is void and should be vacated pursuant to Rule 60(b)(4) if "the court that rendered the judgment acted in a manner inconsistent with due process of law."*

6

2. One of the people **FOLEY MONROE NEALEY** contends that his right to due process, a constitutional guaranteed was deprived and the United States Supreme Court has held that judgments/orders made without due process of law are void and can be attacked at any time directly or collaterally. This Court/Title IV-D Tribunal must provide evidence of jurisdiction to order support in violation of due process as guaranteed by 4th, 5th, 6th, 9th, and 14th amendments as required by due process of law. *"**Although relief under Rule 60(b) is subject to review for abuse of discretion, if a "judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment."** United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply, 55 F.3d 1311, 1317 (7th Cir.1995). A judgment is void and should be vacated pursuant to Rule 60(b)(4) if "the court that rendered the judgment acted in a manner inconsistent with due process of law."*

3. **FOLEY MONROE NEALEY** gives notice that he, having never dealt with the family court system or any court of equity to his knowledge previous to this time, claims an affirmative defense alleging that he did have a good faith reliance on a misleading representation asserted by this court and that he now has an injury and

7

a detrimental change in his position directly resulting from that reliance.

4.  At no time knowingly waived his right to a trial by jury (US Constitution Article 3 Section 2 and Amendment 7) the freedom from involuntary servitude, (US Constitution Amendment 13 Section 1.) and the right to be free from incarceration for failure to pay a debt. This practice concerning civil matters was banned under federal law in 1833 and banned by the US Constitution 14th Amendment as interpreted by the Supreme Court in a 1983 ruling which stated that incarcerating indigent debtors was unconstitutional under the Fourteenth Amendment's Equal Protection clause and under no circumstances can this court create a court ordered money judgment called a support order rendering into poverty by the court's claim that support must be paid and paid through a state run child support enforcement agency for which the state will receive up to 66% federal funds, another violation of taking private property and using for public use without compensation.

5. **FOLEY MONROE NEALEY** at no time waived his right to an impartial equal protection of law under the 5th and 14th amendments.

6. Therefore this court has no discretion but to vacate support orders

created in violation of due process. *Although relief under Rule 60(b) is subject to review for abuse of discretion, if a "judgment is void, it is a per se abuse of discretion for a district court to deny a movant's motion to vacate the judgment."   United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply, 55 F.3d 1311, 1317 (7th Cir.1995). A judgment is void and should be vacated pursuant to Rule 60(b)(4) if "the court that rendered the judgment acted in a manner inconsistent with due process of law."*

7. This demand to vacate void judgments comes with no time restraints for a void judgment, the courts have held, can be attacked at any time, in any court. *Ex parte Siebold, 100 U. S. 371, 376-377: ". . . The validity of the judgments is assailed on the ground that the acts of Congress under which the indictments were found are unconstitutional. If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it. But personal liberty is of so great moment in the eye of the law that*

*the judgment of an inferior court affecting it is not deemed so conclusive but that . . . the question of the court's authority to try and imprison the party may be reviewed on habeas corpus . . . ."*

8. It is the duty of the courts to be impartial and provide equal protection of law and cannot rely upon presumptions in lieu of facts and evidence. *"It may be that it...is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way; namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. It is the duty of the courts to be watchful for the constitutional rights of the citizens, and against any stealthy encroachments thereon. Their motto should be obsta prinicipiis, "* **Mr. Justice Brewer, dissenting, quoting Mr. Justice Bradley in Boyd v. United States, 116 U.S. 616, 29 L.Ed. 746, 6 Sup.Ct.Rep. 524Hale v. Henkel, 201 U.S. 43 (1906)**

9. This affidavit is demanding to view the evidence introduced into court

during evidentiary hearing resulting in granting this judicial or administrative entity the jurisdiction to create support orders ordering a third party Child Support Enforcement Agency to seize the personal property of **FOLEY MONROE NEALEY**, to suspend driving privileges, to suspend travel by freezing passport and to freeze bank accounts.

10. Without evidence, all action taken upon One of the people **FOLEY MONROE NEALEY** are and were unlawful requiring the immediate discharge and dismissal of support orders and requiring this judicial actor and court to issue court orders ordering child support enforcement to cease and desist and order the immediate restoration of rights and property. Definition of inalienable (adj.) Look up inalienable at Dictionary.com "that cannot be given up,"

**PRESUMPTIONS ARE NOT FACTS AND PROPER DUE PROCESS OF LAW IS TO REPLACE ALL PRESUMPTIONS WITH FACTS SUPPORTED BY EVIDENCE**

1. One of the people **FOLEY MONROE NEALEY** hereby informs this court that he rebuts all conclusive presumptions therefore this court must not support use of presumptions without the clarification of evidence to support conclusive

presumptions, such as obligor. An obligor is obligated to a contract, and proof of consent is required before calling one of the people **FOLEY MONROE NEALEY** and obligor by providing proof he entered into a contract to pay child support through child support collection services. ***Obligor (n.) Look up obligor at Dictionary.com "person who binds himself to another by contract,"***

2. The following child support terms are conclusive presumptions encroaching upon my rights to due process and equal protection of law.

3. **Obligor;** The person obligated to pay child support (also referred to as a noncustodial parent or NCP)

4. **Non-custodial parent;** the parent who does not have primary care, custody, or control of the child, and who may have an obligation to pay child support. Also referred to as the obligor.

5. **Biological Father;** The man who provided the paternal genes of a child. The biological father is sometimes referred to as the natural father.

6. **Payor;** Person who makes a payment, usually a noncustodial parent or someone acting on their behalf.

**All Conclusive Presumptions by this Entity or Agent addressing this Judicial Review and Demand for Dismissal and Discharge must be supported by Clarification of Evidence to Support Presumptions or the Presumptions will Prejudice or Injure the Protected Rights of the undersigned, a Violation of Due Process of Law that Results in a Void Judgment for failure to follow due process guaranteed by 5th and 14th amendments.**

1. The presumptions in this matter requiring evidence that due process of law and equal of protection of law were provided and presumption the undersigned is obligated by contract under Title IV-A to pay child support to Title IV-D Child Support Collection contractor.

2. These presumptions must be proven by facts and evidence or this demand for dismissal and discharge must be granted immediately without terms.

   **Black's Law Dictionary, Sixth Edition, defines "presumption" as follows:**

   **Presumption.** *An inference in favor of a particular fact. A presumption is a rule of law, statutory or judicial, by which finding of a basic fact gives rise to existence of presumed fact,*

*until presumption is rebutted.* ***Van Wart v. Cook, Okl.App., 557 P.2d. 1161, 1163.*** *A legal device which operates in the absence of other proof to require that certain inferences be drawn from the available evidence.* ***Port Terminal & Warehousing Co. v. John S. James 40 Co., D.C.Ga., 92 F.R.D. 100, 106.*** **A "presumption" is not evidence, but simply a belief akin to a religion.** *A presumption is an assumption of fact that the law requires to be made from another fact or group of facts found or otherwise established in the action. A presumption is not evidence. A presumption is either conclusive or rebuttable. Every rebuttable presumption is either (a) a presumption affecting the burden of producing evidence or (b) a presumption affecting the burden of proof. Calif.Evid.Code, §600.*

**In all civil actions and proceedings not otherwise provided for by Act of Congress or by the Federal Rules of Evidence, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of non-**

14

**persuasion, which remains throughout the trial upon the party on whom it was originally cast. Federal Evidence Rule 301.**

*See also disputable presumption; inference; Juris et de jure; Presumptive evidence; Prima facie; Raise a presumption.*

Presumptions may not be imposed if they injure rights protected by the Constitution: A conclusive presumption may be defeated where its application would impair a party's constitutionally-protected liberty or property interests.

In such cases, conclusive presumptions have been held to violate a party's due process and equal protection rights. *Vlandis v. Kline (1973) 412 U.S. 441, 449, 93 S.Ct. 2230, 2235; Cleveland Bed. of Ed. v. LaFleur (1974) 414 U.S. 632, 639-640, 94 S.Ct. 1208, 1215-presumption under Illinois law that unmarried fathers are unfit violates process.*

To implement the presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364 (1970). 425 U.S. 501, 504 Delo v. Lashely, 507 U.S. 272 (1993)

*I declare that a full discharge and dismissal for the unconstitutional procedures violating due process used in the efforts to collect an unsubstantiated debt for an unsubstantiated loan for public assistance under Title IV-A of the Social Security Act.*

**All state child support proceedings must be in accordance with federal child support enforcement under 45 CFR 303.101, therefore, I declare that a full discharge and dismissal for violation of due process for the presiding officer's failure to follow guidelines under 45 CFR 303.101 Expedited Processes:**

1. **45 C.F.R. § 303.101(d)(1)** Take testimony and establish a record. Whereas One of the people denies being afforded due process and equal protection of laws as required by 14th amendment, therefore these child support terms are presumptions insinuating guilt, which the facts and lack of physical evidence proves these presumptive terms are false therefore must be removed from all records claiming a Title IV-A child support loan was made to One of the people **FOLEY MONROE NEALEY**

16

2. **45 C.F.R. § 303.101(c)(2)** Parties must be afforded due process; Whereas I understand it, the State of **TEXAS** has seized **FOLEY MONORE NEALEY** property by denying my 14th amendment right to due process and equal protection of law and my property has been seized without a warrant in violation of the 4th amendment.

**EVIDENCE PROVIDED BY DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION THIS COURT HAS A PECUNIARY INTEREST IN THE OUTCOME OF SUPPORT ORDERS WHEREBY A VIOLATION OF DUE PROCESS AND EQUAL PROTECTION OF LAW UNDER 14TH AMENDMENT**

The United States Department of Justice Civil Rights Division Memo dated March 16, 2016, stated the following:

1. *"Courts must safeguard against unconstitutional practices by court staff and private contractors."*

2. *"Courts must not use arrest warrants or license suspensions as a means of coercing the payment of court debt when individuals have not been afforded constitutionally adequate procedural protections."*

Family Court Division, Circuit Courts and Child support enforcement contractors receives federal funds under 42 USC section 654 by states creating a separate organization for child support enforcement and Title IV-

D 42 USC sec 658a for child support enforcement incentives, therefore has a pecuniary interest in the outcome of support proceedings, and this is a serious violation of the due process clause of the 14ᵗʰ amendment under Ward v Monroeville. *Ward v. Village of Monroeville, Ohio, 409 U.S. 57, 61-62 (1972).*

*"In court systems receiving federal funds, these practices may also violate* ***Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d****, when they unnecessarily impose disparate harm on the basis of race or national origin". DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION MEMO DATED MARCH 16, 2016*

Can this court support the practices by child support enforcement as constitutional? If it cannot, it must immediately dismiss and discharge with prejudice.

1. The due process and equal protection principles of the Fourteenth Amendment prohibit "punishing a person for his poverty." ***Bearden v. Georgia, 461 U.S. 660, 671 (1983).***

2. The Supreme Court recently reaffirmed this principle in ***Turner v. Rogers, 131 S. Ct. 2507 (2011)***, holding that a court violates due process when it finds a parent in civil contempt and jails the parent for

failure to pay child support, without first inquiring into the parent's ability to pay. Id. at 2518-19.

3. To comply with this constitutional guarantee, state and local courts must inquire as to a person's ability to pay prior to imposing incarceration for nonpayment.

**Courts must not condition access to a judicial hearing on prepayment of fines or fees.**

*"State and local courts deprive indigent defendants of due process and equal protection if they condition access to the courts on payment of fines or fees.* **See Boddie v. Connecticut, 401 U.S. 371, 374 (1971)** *(holding that due process bars states from conditioning access to compulsory judicial process on the payment of court fees by those unable to pay); see also* **Tucker v. City of Montgomery Bd. of Comm'rs, 410 F. Supp. 494, 502 (M.D. Ala. 1976)** *(holding that the conditioning of an appeal on payment of a bond violates indigent prisoners' equal protection rights and "'has no place in our heritage of Equal Justice Under Law'"* **(citing Burns v. Ohio, 360 U.S. 252, 258 (1959)).** *"*

Suspending of driver's license is an unconstitutional administrative procedure by depriving one of the people **FOLEY MONROE NEALY** of

his right to travel and hindering his livelihood and forcing further into poverty.

**Courts must not use arrest warrants or license suspensions as a means of coercing the payment of court debt when individuals have not been afforded constitutionally adequate procedural protections.**

*"In many jurisdictions, courts are also authorized—and in some cases required—to initiate the suspension of a defendant's driver's license to compel the payment of outstanding court debts. If a defendant's driver's license is suspended because of failure to pay a fine, such a suspension may be unlawful if the defendant was deprived of his due process right to establish inability to pay.* ***See Bell v. Burson, 402 U.S. 535, 539 (1971)*** *(holding that driver's licenses "may become essential in the pursuit of a livelihood" and thus "are not to be taken away without that procedural due process required by the Fourteenth Amendment");* ***cf. Dixon v. Love, 431 U.S. 105, 113-14 (1977)*** *(upholding revocation of driver's license after conviction based in part on the due process provided in the underlying criminal proceedings);* ***Mackey v. Montrym, 443 U.S. 1, 13-17 (1979)*** *(upholding suspension of driver's license after arrest for driving under the influence and refusal to take a breath-analysis test, because suspension "substantially served" the government's interest in public safety and was*

*based on "objective facts either within the personal knowledge of an impartial government official or readily ascertainable by him," making the risk of erroneous deprivation low). Accordingly, automatic license suspensions premised on determinations that fail to comport with Bearden and its progeny may violate due process." DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION MEMO DATED MARCH 16, 2016*

**Courts must safeguard against unconstitutional practices by court staff and private contractors.**

Under 42 USC section 658a Title IV-d Child Support Enforcement incentive payments results in the child support enforcement contractor having a significant pecuniary interest in the outcome, and as in this matter, will use expedited processes to speed up the process so the state of **TEXAS** can receive these federal funds at the cost of one of the people **FOLEY MONROE NEALEY** rights to due process and equal protection of laws guaranteed under the 14th amendment. This court was created to provide remedy and equal protection of laws pursuant the symbol of a blindfolded woman holding a scale, therefore it is required that this court must guard against these encroachments.

*"Additional due process concerns arise when these designees have a direct pecuniary interest in the management or outcome of a case—for example,*

21

when a jurisdiction employs private, for-profit companies to supervise probationers. In many such jurisdictions, probation companies are authorized not only to collect court fines, but also to impose an array of discretionary surcharges (such as supervision fees, late fees, drug testing fees, etc.) to be paid to the company itself rather than to the court. Thus, the probation company that decides what services or sanctions to impose stands to profit from those very decisions. The Supreme Court has "always been sensitive to the possibility that important actors in the criminal justice system may be influenced by factors that threaten to compromise the performance of their duty." *Young v. U.S. ex rel. Vuitton et Fils S.A., 481 U.S. 787, 810 (1987)*. It has expressly prohibited arrangements in which the judge might have a pecuniary interest, direct or indirect, in the outcome of a case. See *Tumey v. Ohio, 273 U.S. 510, 523 (1927)* (invalidating conviction on the basis of $12 fee paid to the mayor only upon conviction in mayor's court); *Ward v. Village of Monroeville, Ohio, 409 U.S. 57, 61-62 (1972)* (extending reasoning of Tumey to cases in which the judge has a clear but not direct interest). It has applied the same reasoning to prosecutors, holding that the appointment of a private prosecutor with a pecuniary interest in the outcome of a case constitutes fundamental error because it "undermines confidence in the integrity of the criminal proceeding." *Young,*

22

*481 U.S. at 811-14. The appointment of a private probation company with a pecuniary interest in the outcome of its cases raises similarly fundamental concerns about fairness and due process" DEPARTMENT OF JUSTICE CIVIL RIGHTS DIVISION MEMO DATED MARCH 16, 2016*

**THE FOLLOWING CAN BE FOUND IN CHAPTER 6 Essentials for Attorneys in Child Enforcement EXPEDITED JUDICIAL AND ADMINISTRATIVE PROCESSES**

**Constitutionality**

*The movement from judicial processes for CSE to administrative processes has raised issues of constitutionality. These are generally issues of separation of powers and due process.*

**Separation of Powers** *The separation of powers issue raised by the advent of administrative processes is whether the legislature can delegate a traditionally judicial area to the Executive branch of Government. The answer depends, in large part, on State constitutional law. Generally, State legislatures have broad authority to determine the right and responsibilities of citizens and to establish processes for enforcing those responsibilities. PRWORA did not mandate the administrative establishment of child support orders, leaving the decision as to whether to remove this function from the Judicial branch and place it with the Executive branch up to the States.*

23

*The Supreme Court of Minnesota recently held the administrative child support process created by its legislature to be a violation of the separation of powers doctrine.*

*Minnesota's administrative process included procedures for uncontested and contested cases. In uncontested cases, the agency prepared a proposed support order for the parties' signature and the administrative law judge's ratification. If either party contested the proposed order, the case moved into the contested process. In the contested process, the case was presented by a child support officer (CSO) who was not an attorney. The administrative law judge (ALJ) had judicial powers, including the ability to modify judicial child support orders. While the ALJ could not preside over contested paternity and contempt proceedings, he or she could grant stipulated contempt orders and uncontested paternity orders. While recognizing the importance of streamlining child support mechanisms, the Minnesota Supreme Court stated it could not ignore separation of powers constraints. It concluded that the administrative structure violated separation of powers for three reasons. First, the administrative process infringed on the district court's jurisdiction in contravention to the Minnesota Constitution. Second, ALJ jurisdiction was not inferior to the district court's jurisdiction, as mandated by the Minnesota Constitution.*

*Third, the administrative process empowered non-attorneys to engage in the practice of law, infringing on the court's exclusive power to supervise the practice of law. The decision was stayed for several months to give the legislature time to amend Minnesota laws in accord with the decision.*

**Due Process**

*The question of due process raises a fundamental Federal constitutional protection. The 14th Amendment to the United States Constitution provides that a person "shall not be deprived of life, liberty, or property without due process of law." The U.S. Supreme Court has established some very important criteria for due process, falling into three general areas: Challenges have arisen to the manner in which administrative process is invoked. An illustrative case is Holmberg v. Holmberg, in which the Minnesota Supreme Court held that the State's administrative process for child support orders was unconstitutional. The legislature had put into place a system under which uncontested child support cases could be heard by administrative law judges, who had the power to set child support awards, and to modify awards previously set by circuit courts. The orders were directly appealable to the appellate court, without review by the district court. The Minnesota Supreme Court held that such a system is unconstitutional because it violates the separation of powers doctrine and*

25

*usurps the original jurisdiction of the district court.* On more of the constitutional safeguards has been violated in the expedited processes for assessment of support and issuance of an alleged support order alleging a debt exists for a loan under Title IV-A of Social Security Act. The court must provide proof of a money judgment entered with county clerk pursuant All Writs Section proving that all writs coming from a court within the US must have a clerk's signature pursuant 28 USC section 1691 or it is void. The Court hearing this demand for dismissal and discharge has the judicial responsibility to ensure the equal protection clause provided the 14th amendment protecting against any state child support laws and administrative procedures which shall violate the following:

1. The 14th amendment protection from State Laws and administrative procedures that shall violate inalienable rights guaranteed in the state and US Bill of Rights. *A fundamental, constitutional guarantee that all legal proceedings will be fair and that one will be given notice of the proceedings and an opportunity to be heard before the government acts to take away one's life, liberty, or property. Also, a constitutional guarantee that a law shall not be unreasonable, Arbitrary, or capricious*

2. 7th Amendment Right to a trial by jury in controversies of $20 or more.

3. The threat of incarceration must allow for right to counsel in accordance with 6th amendment.

4. The 4th amendment guarantee of freedom from seizure of property unless by due process of law by a warrant with oath or affirmation. The seizure of property were violated and this court must guard against violation. All courts are created for remedy and this declaration and demand for remedy by issuance of dismissal and discharge with prejudice.

**CLARIFICATION OF EVIDENCE IS WHAT GIVES THE ADJUDICATOR AND THE COURT JURISDICTION TO SUPPORT A DISMISSAL/DENIAL OF THIS NOTICE TO THE COURT**

Please refrain from dismissing this notice of Demand with a single line statement *"dismissed/denial for lack of merit"* without first providing a clear clarification of evidence introduced by the petitioner of the support proceedings. The justification of a Dismissal/Denial must be based upon evidence, and clarification of this evidence by clarifying where and when such proof was introduced along with the exhibit number or letter affixed

27

to the exhibits marked as evidence, which led the fact finder to establish the support orders.

One of the people FOLEY MONROE NEALEY confident this Court will immediately dismiss and discharge this matter with prejudice. Thank you.

**CERTIFICATION**

The undersigned hereby affirms under threat of perjury that the aforementioned affidavit is true and the information in italics were accumulated from *45 CFR 303.101*, *Chapter 6 Essentials for Attorneys Health and Human Services* and *United States Department of Justice Civil Rights Division dated March 16, 2016.*

_Foley Monroe Nealey_ (Name and Signature of
Affiant) Foley MONROE NEALEY

SWORN to and subscribed before me, this the _12th_ day of _December_ ,

20 _17_ .

NOTARY PUBLIC

DEBRA DAVIS BARNES
My Commission Expires
May 6, 2019

My Commission Expires:

_May 06, 2019_

29



**U.S. Department of Justice**

Civil Rights Division

Office for Access to Justice

*Washington, D.C. 20530*

March 14, 2016

Dear Colleague:

The Department of Justice ("the Department") is committed to assisting state and local courts in their efforts to ensure equal justice and due process for all those who come before them. In December 2015, the Department convened a diverse group of stakeholders—judges, court administrators, lawmakers, prosecutors, defense attorneys, advocates, and impacted individuals—to discuss the assessment and enforcement of fines and fees in state and local courts. While the convening made plain that unlawful and harmful practices exist in certain jurisdictions throughout the country, it also highlighted a number of reform efforts underway by state leaders, judicial officers, and advocates, and underscored the commitment of all the participants to continue addressing these critical issues. At the meeting, participants and Department officials also discussed ways in which the Department could assist courts in their efforts to make needed changes. Among other recommendations, participants called on the Department to provide greater clarity to state and local courts regarding their legal obligations with respect to fines and fees and to share best practices. Accordingly, this letter is intended to address some of the most common practices that run afoul of the United States Constitution and/or other federal laws and to assist court leadership in ensuring that courts at every level of the justice system operate fairly and lawfully, as well as to suggest alternative practices that can address legitimate public safety needs while also protecting the rights of participants in the justice system.

Recent years have seen increased attention on the illegal enforcement of fines and fees in certain jurisdictions around the country—often with respect to individuals accused of misdemeanors, quasi-criminal ordinance violations, or civil infractions.[1] Typically, courts do not sentence defendants to incarceration in these cases; monetary fines are the norm. Yet the harm

---

[1] *See, e.g.*, Civil Rights Division, U.S. Department of Justice, *Investigation of the Ferguson Police Department* (Mar. 4, 2015), http://www.justice.gov/crt/about/spl/documents/ferguson_findings_3-4-15.pdf (finding that the Ferguson, Missouri, municipal court routinely deprived people of their constitutional rights to due process and equal protection and other federal protections); Brennan Center for Justice, *Criminal Justice Debt: A Barrier to Reentry* (2010), *available at* http://www.brennancenter.org/sites/default/files/legacy/Fees%20and%20Fines%20FINAL.pdf (reporting on fine and fee practices in fifteen states); American Civil Liberties Union, *In for a Penny: The Rise of America's New Debtors' Prisons* (2010), *available at* https://www.aclu.org/files/assets/InForAPenny_web.pdf (discussing practices in Louisiana, Michigan, Ohio, Georgia, and Washington state).

caused by unlawful practices in these jurisdictions can be profound. Individuals may confront escalating debt; face repeated, unnecessary incarceration for nonpayment despite posing no danger to the community[2]; lose their jobs; and become trapped in cycles of poverty that can be nearly impossible to escape.[3] Furthermore, in addition to being unlawful, to the extent that these practices are geared not toward addressing public safety, but rather toward raising revenue, they can cast doubt on the impartiality of the tribunal and erode trust between local governments and their constituents.[4]

To help judicial actors protect individuals' rights and avoid unnecessary harm, we discuss below a set of basic constitutional principles relevant to the enforcement of fines and fees. These principles, grounded in the rights to due process and equal protection, require the following:

(1) Courts must not incarcerate a person for nonpayment of fines or fees without first conducting an indigency determination and establishing that the failure to pay was willful;

(2) Courts must consider alternatives to incarceration for indigent defendants unable to pay fines and fees;

(3) Courts must not condition access to a judicial hearing on the prepayment of fines or fees;

(4) Courts must provide meaningful notice and, in appropriate cases, counsel, when enforcing fines and fees;

(5) Courts must not use arrest warrants or license suspensions as a means of coercing the payment of court debt when individuals have not been afforded constitutionally adequate procedural protections;

(6) Courts must not employ bail or bond practices that cause indigent defendants to remain incarcerated solely because they cannot afford to pay for their release; and

(7) Courts must safeguard against unconstitutional practices by court staff and private contractors.

In court systems receiving federal funds, these practices may also violate Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, when they unnecessarily impose disparate harm on the basis of race or national origin.

---

[2] Nothing in this letter is intended to suggest that courts may not preventively detain a defendant pretrial in order to secure the safety of the public or appearance of the defendant.

[3] See Council of Economic Advisers, Issue Brief, *Fines, Fees, and Bail: Payments in the Criminal Justice System that Disproportionately Impact the Poor*, at 1 (Dec. 2015), *available at* https://www.whitehouse.gov/sites/default/files/page/files/1215_cea_fine_fee_bail_issue_brief.pdf (describing the disproportionate impact on the poor of fixed monetary penalties, which "can lead to high levels of debt and even incarceration for failure to fulfil a payment" and create "barriers to successful re-entry after an offense").

[4] *See* Conference of State Court Administrators, 2011-2012 Policy Paper, *Courts Are Not Revenue Centers* (2012), *available at* https://csgjusticecenter.org/wp-content/uploads/2013/07/2011-12-COSCA-report.pdf.

2

As court leaders, your guidance on these issues is critical. We urge you to review court rules and procedures within your jurisdiction to ensure that they comply with due process, equal protection, and sound public policy. We also encourage you to forward a copy of this letter to every judge in your jurisdiction; to provide appropriate training for judges in the areas discussed below; and to develop resources, such as bench books, to assist judges in performing their duties lawfully and effectively. We also hope that you will work with the Justice Department, going forward, to continue to develop and share solutions for implementing and adhering to these principles.

1. Courts must not incarcerate a person for nonpayment of fines or fees without first conducting an indigency determination and establishing that the failure to pay was willful.

The due process and equal protection principles of the Fourteenth Amendment prohibit "punishing a person for his poverty." *Bearden v. Georgia*, 461 U.S. 660, 671 (1983). Accordingly, the Supreme Court has repeatedly held that the government may not incarcerate an individual solely because of inability to pay a fine or fee. In *Bearden*, the Court prohibited the incarceration of indigent probationers for failing to pay a fine because "[t]o do otherwise would deprive the probationer of his conditional freedom simply because, through no fault of his own, he cannot pay the fine. Such a deprivation would be contrary to the fundamental fairness required by the Fourteenth Amendment." *Id.* at 672-73; *see also Tate v. Short*, 401 U.S. 395, 398 (1971) (holding that state could not convert defendant's unpaid fine for a fine-only offense to incarceration because that would subject him "to imprisonment solely because of his indigency"); *Williams v. Illinois*, 399 U.S. 235, 241-42 (1970) (holding that an indigent defendant could not be imprisoned longer than the statutory maximum for failing to pay his fine). The Supreme Court recently reaffirmed this principle in *Turner v. Rogers*, 131 S. Ct. 2507 (2011), holding that a court violates due process when it finds a parent in civil contempt and jails the parent for failure to pay child support, without first inquiring into the parent's ability to pay. *Id.* at 2518-19.

To comply with this constitutional guarantee, state and local courts must inquire as to a person's ability to pay prior to imposing incarceration for nonpayment. Courts have an affirmative duty to conduct these inquiries and should do so sua sponte. *Bearden*, 461 U.S. at 671. Further, a court's obligation to conduct indigency inquiries endures throughout the life of a case. *See id.* at 662-63. A probationer may lose her job or suddenly require expensive medical care, leaving her in precarious financial circumstances. For that reason, a missed payment cannot itself be sufficient to trigger a person's arrest or detention unless the court first inquires anew into the reasons for the person's non-payment and determines that it was willful. In addition, to minimize these problems, courts should inquire into ability to pay at sentencing, when contemplating the assessment of fines and fees, rather than waiting until a person fails to pay.

Under *Bearden*, standards for indigency inquiries must ensure fair and accurate assessments of defendants' ability to pay. Due process requires that such standards include both notice to the defendant that ability to pay is a critical issue, and a meaningful opportunity for the defendant to be heard on the question of his or her financial circumstances. *See Turner*, 131 S. Ct. at 2519-20 (requiring courts to follow these specific procedures, and others, to prevent unrepresented parties from being jailed because of financial incapacity). Jurisdictions may benefit from creating statutory presumptions of indigency for certain classes of defendants—for example, those eligible for public benefits, living below a certain income level, or serving a term of confinement. *See, e.g.*, R.I. Gen. Laws § 12-20-10 (listing conditions considered "prima facie evidence of the defendant's indigency and limited ability to pay," including but not limited to "[q]ualification for and/or receipt of" public assistance, disability insurance, and food stamps).

2. <u>Courts must consider alternatives to incarceration for indigent defendants unable to pay fines and fees.</u>

When individuals of limited means cannot satisfy their financial obligations, *Bearden* requires consideration of "alternatives to imprisonment." 461 U.S. at 672. These alternatives may include extending the time for payment, reducing the debt, requiring the defendant to attend traffic or public safety classes, or imposing community service. *See id.* Recognizing this constitutional imperative, some jurisdictions have codified alternatives to incarceration in state law. *See, e.g.*, Ga. Code Ann. § 42-8-102(f)(4)(A) (2015) (providing that for "failure to report to probation or failure to pay fines, statutory surcharges, or probation supervision fees, the court shall consider the use of alternatives to confinement, including community service"); *see also Tate*, 401 U.S. at 400 n.5 (discussing effectiveness of fine payment plans and citing examples from several states). In some cases, it will be immediately apparent that a person is not and will not likely become able to pay a monetary fine. Therefore, courts should consider providing alternatives to indigent defendants not only after a failure to pay, but also in lieu of imposing financial obligations in the first place.

Neither community service programs nor payment plans, however, should become a means to impose greater penalties on the poor by, for example, imposing onerous user fees or interest. With respect to community service programs, court officials should consider delineating clear and consistent standards that allow individuals adequate time to complete the service and avoid creating unreasonable conflicts with individuals' work and family obligations. In imposing payment plans, courts should consider assessing the defendant's financial resources to determine a reasonable periodic payment, and should consider including a mechanism for defendants to seek a reduction in their monthly obligation if their financial circumstances change.

3. <u>Courts must not condition access to a judicial hearing on prepayment of fines or fees.</u>

State and local courts deprive indigent defendants of due process and equal protection if they condition access to the courts on payment of fines or fees. *See Boddie v. Connecticut*, 401 U.S. 371, 374 (1971) (holding that due process bars states from conditioning access to

4

compulsory judicial process on the payment of court fees by those unable to pay); *see also Tucker v. City of Montgomery Bd. of Comm'rs*, 410 F. Supp. 494, 502 (M.D. Ala. 1976) (holding that the conditioning of an appeal on payment of a bond violates indigent prisoners' equal protection rights and "'has no place in our heritage of Equal Justice Under Law'" (citing *Burns v. Ohio*, 360 U.S. 252, 258 (1959)).[5]

This unconstitutional practice is often framed as a routine administrative matter. For example, a motorist who is arrested for driving with a suspended license may be told that the penalty for the citation is $300 and that a court date will be scheduled only upon the completion of a $300 payment (sometimes referred to as a prehearing "bond" or "bail" payment). Courts most commonly impose these prepayment requirements on defendants who have failed to appear, depriving those defendants of the opportunity to establish good cause for missing court. Regardless of the charge, these requirements can have the effect of denying access to justice to the poor.

4.  Courts must provide meaningful notice and, in appropriate cases, counsel, when enforcing fines and fees.

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314-15 (1950); *see also Turner*, 131 S. Ct. at 2519 (discussing the importance of notice in proceedings to enforce a child support order). Thus, constitutionally adequate notice must be provided for even the most minor cases. Courts should ensure that citations and summonses adequately inform individuals of the precise charges against them, the amount owed or other possible penalties, the date of their court hearing, the availability of alternate means of payment, the rules and procedures of court, their rights as a litigant, or whether in-person appearance is required at all. Gaps in this vital information can make it difficult, if not impossible, for defendants to fairly and expeditiously resolve their cases. And inadequate notice can have a cascading effect, resulting in the defendant's failure to appear and leading to the imposition of significant penalties in violation of the defendant's due process rights.

Further, courts must ensure defendants' right to counsel in appropriate cases when enforcing fines and fees. Failing to appear or to pay outstanding fines or fees can result in incarceration, whether through the pursuit of criminal charges or criminal contempt, the imposition of a sentence that had been suspended, or the pursuit of civil contempt proceedings. The Sixth Amendment requires that a defendant be provided the right to counsel in any criminal proceeding resulting in incarceration, *see Scott v. Illinois*, 440 U.S. 367, 373 (1979); *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972), and indeed forbids imposition of a suspended jail sentence on a probationer who was not afforded a right to counsel when originally convicted and sentenced,

---

[5] The Supreme Court reaffirmed this principle in *Little v. Streater*, 452 U.S. 1, 16-17 (1981), when it prohibited conditioning indigent persons' access to blood tests in adversarial paternity actions on payment of a fee, and in *M.L.B. v. S.L.J.*, 519 U.S. 102, 107 (1996), when it prohibited charging filing fees to indigent persons seeking to appeal from proceedings terminating their parental rights.

5

*see Alabama v. Shelton*, 535 U.S. 654, 662 (2002). Under the Fourteenth Amendment, defendants likewise may be entitled to counsel in civil contempt proceedings for failure to pay fines or fees. *See Turner*, 131 S. Ct. at 2518-19 (holding that, although there is no automatic right to counsel in civil contempt proceedings for nonpayment of child support, due process is violated when neither counsel nor adequate alternative procedural safeguards are provided to prevent incarceration for inability to pay).[6]

> 5. Courts must not use arrest warrants or license suspensions as a means of coercing the payment of court debt when individuals have not been afforded constitutionally adequate procedural protections.

The use of arrest warrants as a means of debt collection, rather than in response to public safety needs, creates unnecessary risk that individuals' constitutional rights will be violated. Warrants must not be issued for failure to pay without providing adequate notice to a defendant, a hearing where the defendant's ability to pay is assessed, and other basic procedural protections. *See Turner*, 131 S. Ct. at 2519; *Bearden*, 461 U.S. at 671-72; *Mullane*, 339 U.S. at 314-15. When people are arrested and detained on these warrants, the result is an unconstitutional deprivation of liberty. Rather than arrest and incarceration, courts should consider less harmful and less costly means of collecting justifiable debts, including civil debt collection.[7]

In many jurisdictions, courts are also authorized—and in some cases required—to initiate the suspension of a defendant's driver's license to compel the payment of outstanding court debts. If a defendant's driver's license is suspended because of failure to pay a fine, such a suspension may be unlawful if the defendant was deprived of his due process right to establish inability to pay. *See Bell v. Burson*, 402 U.S. 535, 539 (1971) (holding that driver's licenses "may become essential in the pursuit of a livelihood" and thus "are not to be taken away without that procedural due process required by the Fourteenth Amendment"); *cf. Dixon v. Love*, 431 U.S. 105, 113-14 (1977) (upholding revocation of driver's license after conviction based in part on the due process provided in the underlying criminal proceedings); *Mackey v. Montrym*, 443 U.S. 1, 13-17 (1979) (upholding suspension of driver's license after arrest for driving under the influence and refusal to take a breath-analysis test, because suspension "substantially served" the government's interest in public safety and was based on "objective facts either within the personal knowledge of an impartial government official or readily ascertainable by him," making the risk of erroneous deprivation low). Accordingly, automatic license suspensions premised on determinations that fail to comport with *Bearden* and its progeny may violate due process.

---

[6] *Turner*'s ruling that the right to counsel is not automatic was limited to contempt proceedings arising from failure to pay child support to a custodial parent who is unrepresented by counsel. *See* 131 S. Ct. at 2512, 2519. The Court explained that recognizing such an automatic right in that context "could create an asymmetry of representation." *Id.* at 2519. The Court distinguished those circumstances from civil contempt proceedings to recover funds due to the government, which "more closely resemble debt-collection proceedings" in which "[t]he government is likely to have counsel or some other competent representative." *Id.* at 2520.

[7] Researchers have questioned whether the use of police and jail resources to coerce the payment of court debts is cost-effective. *See, e.g.*, Katherine Beckett & Alexes Harris, *On Cash and Conviction: Monetary Sanctions as Misguided Policy*, 10 CRIMINOLOGY & PUB. POL'Y 505, 527-28 (2011). This strategy may also undermine public safety by diverting police resources and stimulating public distrust of law enforcement.

6

Even where such suspensions are lawful, they nonetheless raise significant public policy concerns. Research has consistently found that having a valid driver's license can be crucial to individuals' ability to maintain a job, pursue educational opportunities, and care for families.[8] At the same time, suspending defendants' licenses decreases the likelihood that defendants will resolve pending cases and outstanding court debts, both by jeopardizing their employment and by making it more difficult to travel to court, and results in more unlicensed driving. For these reasons, where they have discretion to do so, state and local courts are encouraged to avoid suspending driver's licenses as a debt collection tool, reserving suspension for cases in which it would increase public safety.[9]

6. <u>Courts must not employ bail or bond practices that cause indigent defendants to remain incarcerated solely because they cannot afford to pay for their release.</u>

When indigent defendants are arrested for failure to make payments they cannot afford, they can be subjected to another independent violation of their rights: prolonged detention due to unlawful bail or bond practices. Bail that is set without regard to defendants' financial capacity can result in the incarceration of individuals not because they pose a threat to public safety or a flight risk, but rather because they cannot afford the assigned bail amount.

As the Department of Justice set forth in detail in a federal court brief last year, and as courts have long recognized, any bail practices that result in incarceration based on poverty violate the Fourteenth Amendment. *See* Statement of Interest of the United States, *Varden v. City of Clanton*, No. 2:15-cv-34-MHT-WC, at 8 (M.D. Ala., Feb. 13, 2015) (citing *Bearden*, 461 U.S. at 671; *Tate*, 401 U.S. at 398; *Williams*, 399 U.S. at 240-41).[10] Systems that rely primarily on secured monetary bonds without adequate consideration of defendants' financial means tend to result in the incarceration of poor defendants who pose no threat to public safety solely because they cannot afford to pay.[11] To better protect constitutional rights while ensuring defendants' appearance in court and the safety of the community, courts should consider transitioning from a system based on secured monetary bail alone to one grounded in objective risk assessments by pretrial experts. *See, e.g.*, D.C. Code § 23-1321 (2014); Colo. Rev. Stat. 16-

---

[8] *See, e.g.*, Robert Cervero, et al., *Transportation as a Stimulus of Welfare-to-Work: Private versus Public Mobility*, 22 J. PLAN. EDUC. & RES. 50 (2002); Alan M. Voorhees, et al., *Motor Vehicles Affordability and Fairness Task Force: Final Report*, at xii (2006), *available at* http://www.state.nj.us/mvc/pdf/About/AFTF_final_02.pdf (a study of suspended drivers in New Jersey, which found that 42% of people lost their jobs as a result of the driver's license suspension, that 45% of those could not find another job, and that this had the greatest impact on seniors and low-income individuals).

[9] *See* Am. Ass'n of Motor Veh. Adm'rs, *Best Practices Guide to Reducing Suspended Drivers*, at 3 (2013), *available at* http://www.aamva.org/WorkArea/linkit.aspx?LinkIdentifier=id&ItemID=3723&libID=3709 (recommending that "legislatures repeal state laws requiring the suspension of driving privileges for non-highway safety related violations" and citing research supporting view that fewer driver suspensions for non-compliance with court requirements would increase public safety).

[10] The United States' Statement of Interest in *Varden* is available at http://www.justice.gov/sites/default/files/opa/pressreleases/attachments/2015/02/13/varden statement_ of_interest.pdf.

[11] *See supra* Statement of the United States, *Varden*, at 11 (citing Timothy R. Schnacke, U.S. Department of Justice, National Institute of Corrections, FUNDAMENTALS OF BAIL: A RESOURCE GUIDE FOR PRETRIAL PRACTITIONERS AND A FRAMEWORK FOR AMERICAN PRETRIAL REFORM, at 2 (2014), *available at* http://nicic.gov/library/028360).

7

4-104 (2014); Ky. Rev. Stat. Ann. § 431.066 (2015); N.J. S. 946/A1910 (enacted 2015); *see also* 18 U.S.C. § 3142 (permitting pretrial detention in the federal system when no conditions will reasonably assure the appearance of the defendant and safety of the community, but cautioning that "[t]he judicial officer may not impose a financial condition that results in the pretrial detention of the person").

7.  <u>Courts must safeguard against unconstitutional practices by court staff and private contractors.</u>

In many courts, especially those adjudicating strictly minor or local offenses, the judge or magistrate may preside for only a few hours or days per week, while most of the business of the court is conducted by clerks or probation officers outside of court sessions. As a result, clerks and other court staff are sometimes tasked with conducting indigency inquiries, determining bond amounts, issuing arrest warrants, and other critical functions—often with only perfunctory review by a judicial officer, or no review at all. Without adequate judicial oversight, there is no reliable means of ensuring that these tasks are performed consistent with due process and equal protection. Regardless of the size of the docket or the limited hours of the court, judges must ensure that the law is followed and preserve "both the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 242 (1980) (internal quotation marks omitted); *see also* American Bar Association, MODEL CODE OF JUDICIAL CONDUCT, Canon 2, Rules 2.2, 2.5, 2.12.

Additional due process concerns arise when these designees have a direct pecuniary interest in the management or outcome of a case—for example, when a jurisdiction employs private, for-profit companies to supervise probationers. In many such jurisdictions, probation companies are authorized not only to collect court fines, but also to impose an array of discretionary surcharges (such as supervision fees, late fees, drug testing fees, etc.) to be paid to the company itself rather than to the court. Thus, the probation company that decides what services or sanctions to impose stands to profit from those very decisions. The Supreme Court has "always been sensitive to the possibility that important actors in the criminal justice system may be influenced by factors that threaten to compromise the performance of their duty." *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 810 (1987). It has expressly prohibited arrangements in which the judge might have a pecuniary interest, direct or indirect, in the outcome of a case. *See Tumey v. Ohio*, 273 U.S. 510, 523 (1927) (invalidating conviction on the basis of $12 fee paid to the mayor only upon conviction in mayor's court); *Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 61-62 (1972) (extending reasoning of *Tumey* to cases in which the judge has a clear but not direct interest). It has applied the same reasoning to prosecutors, holding that the appointment of a private prosecutor with a pecuniary interest in the outcome of a case constitutes fundamental error because it "undermines confidence in the integrity of the criminal proceeding." *Young*, 481 U.S. at 811-14. The appointment of a private probation company with a pecuniary interest in the outcome of its cases raises similarly fundamental concerns about fairness and due process.

\* \* \* \* \*

8

The Department of Justice has a strong interest in ensuring that state and local courts provide every individual with the basic protections guaranteed by the Constitution and other federal laws, regardless of his or her financial means. We are eager to build on the December 2015 convening about these issues by supporting your efforts at the state and local levels, and we look forward to working collaboratively with all stakeholders to ensure that every part of our justice system provides equal justice and due process.

Sincerely,

Vanita Gupta
Principal Deputy Assistant Attorney General
Civil Rights Division

Lisa Foster
Director
Office for Access to Justice

9

AO 240A (Rev. 01/09) Order to Proceed Without Prepaying Fees or Costs

# UNITED STATES DISTRICT COURT
### for the
Southern District of Texas ☑

| | |
|---|---|
| FOLEY MONROE NEALEY | ) |
| *Plaintiff* | ) |
| v. | ) Civil Action No. |
| TEXAS OFFICE OF ATTORNEY GENERAL | ) |
| *Defendant* | ) |

## ORDER TO PROCEED WITHOUT PREPAYING FEES OR COSTS

**IT IS ORDERED:**  The plaintiff's application under 28 U.S.C. § 1915 to proceed without prepaying fees or costs is:

☐ Granted:

The clerk is ordered to file the complaint and issue a summons. The United States marshal is ordered to serve the summons with a copy of the complaint and this order on the defendant(s). The United States will advance the costs of service. Prisoner plaintiffs are responsible for full payment of the filing fee.

☐ Granted Conditionally:

The clerk is ordered to file the complaint. Upon receipt of the completed summons and <u>USM-285</u> form for each defendant, the clerk will issue a summons. If the completed summons and USM-285 forms are not submitted as directed, the complaint may be dismissed. The United States marshal is ordered to serve the completed summons with a copy of the complaint and this order on the defendant(s). The United States will advance the costs of service. Prisoner plaintiffs are responsible for full payment of the filing fee.

☐ Denied:

This application is denied for these reasons:

Date: _____

_____
*Judge's signature*

_____
*Printed name and title*

NO._____

| | | |
|---|---|---|
| **FOLEY MONROE NEALEY**<br>**Plaintiff** | §<br>§<br>§<br>§<br>§<br>§ | **IN THE UNITED STATES DISTRICT COURT**<br>**SOUTHERN DISTRICT OF TEXAS**<br> **HOUSTON DIVISION** |
| **Vs.** | §<br>§<br>§ | |
| **TEXAS OFFICE OF ATTORNEY GENERAL**<br>**Defendant** | § | |

## AFFIDAVIT FOR TEMPORARY INJUNCTION

PERSONALLY appeared before me, the undersigned authority in and for said county
- and state, **FOLEY MONROE NEALEY** , who, having been being first duty sworn by the undersigned Notary Public, deposes and says:

1.      I am the Plaintiff in the above-entitled action, and make this Affidavit in support of my Motion for Issuance of a Temporary Restraining Order and Preliminary Injunction with notice to the **TEXAS OFFICE OF ATTORNEY GENERAL**, the Defendant in this action.

2. This action seeks to restrain and enjoin Defendant from causing deprivation of the plaintiff's property.

3.      Unless I am granted the requested Office of Attorney injunctive relief, I will suffer irreparable harm, in that the Defendant The **Texas Attorney General** has seized the Plaintiffs property by denying his 14th amendment right to due process and equal protection of the law and my property has been seized without a warrant in violation of the 4th amendment._____

_____

_____, for which I have has no adequate remedy at law.

Witness my signature this the _December 12, 2017_ (date).

_Jule Nealey_
**(Name and Signature of Affiant)** Foley Monroe Nealey

SWORN to and subscribed before me, this the 12th day of December, 20 17 .

NOTARY PUBLIC

My Commission Expires:
MAY 06, 2019